IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jean M. Persun, | No. CV-12-590-TUC-JGZ |
| Plaintiff, | **ORDER** |
| vs. | |
| New Jersey Education Assoc. (NJEA) – Member Benefit Fund and the Prudential Insurance Company of America, | |
| Defendants. | |

Pending before the Court is an Opening Brief filed by Plaintiff on March 28, 2013, in which Plaintiff appeals Defendants' denial of her claim for long-term disability benefits pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Doc. 28.) Defendants filed a Response Brief on May 1, 2013. (Doc. 29.) Plaintiff filed a Reply Brief on May 15, 2013.[1] (Doc. 31.) For the reasons stated herein, the Court will deny the relief requested in Plaintiff's Opening Brief and enter judgment in favor of Defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a 63 year-old former school teacher from New Jersey. (Doc. 30-4, pgs. 164-171.) On February 16, 2006, Plaintiff stopped teaching due to depression, anxiety

---

[1] A Scheduling Conference was conducted with the parties on November 14, 2012. During the conference, the parties agreed that because this matter challenges an administrative decision pursuant to ERISA, the complaint can be resolved through appeal-style briefing. (Doc. 23.) The Court's November 16, 2012 Scheduling Order directed the parties to submit briefs in compliance with LRCiv 16.1(a) and (b). Plaintiff's Statement of Facts submitted in support of Plaintiff's Opening Brief failed to comply with LRCiv 16.1(a); accordingly Defendants submitted a Response to Plaintiff's Statement of Facts and a Statement of Additional Facts. (Doc. 30.)

and drug abuse. (Doc. 30-4, pg. 63.)  On May 10, 2006, Plaintiff applied for long-term disability ("LTD") benefits under the New Jersey Education Association Member Benefit Fund ("the Fund").  (Doc. 30-4, pg. 65.)  The Fund documents provide that a participant is disabled if Defendant Prudential Insurance Company ("Prudential") determines that the participant is unable to perform the material and substantial duties of her own occupation due to sickness or injury and the participant has a 20% or more loss in monthly earnings due to sickness or injury.  (Doc. 30-7, pg. 11.)   The Fund further provides that after 24 months, a participant is disabled if she is unable to perform the duties of any gainful occupation due to sickness or injury.  (Doc. 30-7, pg. 11.)  LTD benefits in the case of disabilities due to mental illness are limited to 24 months.  (Doc. 30-7, pgs. 18-19.) The Fund provides that Prudential has the sole discretion to determine eligibility for LTD benefits. (Doc. 30-7, pg. 32.)

In reviewing Plaintiff's claim, Prudential requested Plaintiff's medical records from her treating physician and from Plaintiff on numerous occasions.  (Doc. 30-4, pgs. 69, 158-160.) Plaintiff's request for LTD benefits was denied on September 11, 2006. (Doc. 30-4, pg. 148.)   The September 11, 2006 decision indicated that there was insufficient medical evidence in the file to support a finding of an impairment. (Doc. 30-4, pg. 149.)

On March 1, 2007, Plaintiff appealed the denial of her request for LTD benefits. (Doc. 30-2, pg. 119.)  In April, 2007, during the processing of her claim, Plaintiff relocated to Arizona.  (Doc. 30-2, pg. 126.)  Sometime prior to May 13, 2008, Plaintiff retained counsel in Arizona.   (Doc. 30-4, pg. 146.)   Plaintiff's counsel requested Plaintiff's medical records on May 13, 2008. (Doc. 30-4, pg. 145.)   On June 3, 2008 and July 7, 2008, counsel requested additional time to review Plaintiff's medical records. (Doc. 30-2, pgs. 138, 140.)  On July 25, 2008, Plaintiff requested a closed period of disability from February 17, 2006 to September 1, 2006.  (Doc. 30-2, pg. 147.)   On November 20, 2008, Prudential awarded Plaintiff benefits from March 3, 2006 to October 31, 2006.  (Doc. 30-4, pg. 141.)  Prudential also notified Plaintiff that she might be

eligible for additional LTD benefits beyond the date requested if Plaintiff could provide additional medical records demonstrating a continued disability through the 24-month benefit limitation period for disabilities due to mental illness. (Doc. 30-4, pg. 143.)

Plaintiff requested an award of LTD benefits through March, 2008 in order to receive the full 24 months of LTD benefits permitted by the Fund. (Doc. 30-3, pg. 277.) On December 28, 2009, Prudential awarded Plaintiff LTD benefits through December 31, 2006, and requested additional medical records in order to assess Plaintiff's eligibility for LTD benefits between December 31, 2006 and March, 2008. (Doc. 30-4, pg. 117.) On October 18, 2010, after reviewing additional medical information provided by Plaintiff, Prudential denied Plaintiff's request for additional benefits. (Doc. 30-4, pg. 107.)

On April 5, 2011, Plaintiff appealed Prudential's October 18, 2010 decision. (Doc. 30-3, pg. 31.) On June 6, 2011, after submitting Plaintiff's medical records to two independent physicians for review, Prudential denied Plaintiff's appeal. (Doc. 30-4, pg. 93.)

On December 12, 2011, Plaintiff appealed Prudential's June 6, 2011 decision. (Doc. 30-3, pg. 302.) On January 25, 2012, after submitting Plaintiff's medical records to an independent psychiatrist, Prudential denied Plaintiff's appeal. (Doc. 30-4, pg. 80.)

Plaintiff filed her Complaint in the instant action on August 6, 2012. (Doc. 1.)

## STANDARD OF REVIEW

When, as is the case here, a plan confers discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan, the Court reviews the administrator's decision for abuse of discretion. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006); *see also Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008). Under the abuse of discretion standard, the Court must consider whether the administrator "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).

Plaintiff contends that the Court should engage in a heightened scrutiny of Prudential's decision to deny benefits because, according to Plaintiff, Prudential unduly delayed its consideration of Plaintiff's claim. An insurer that acts as both the plan administrator and the funding source for benefits operates under a structural conflict of interest between providing benefits to those who deserve them and protecting its own coffers. *Id*. at 965-66. The existence of a conflict of interest is relevant to how a court conducts abuse of discretion review, *ie*. the conflict of interest must be weighed as a factor in determining whether the administrator abused its discretion. *Id*. at 965. The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied by any evidence of malice, self-dealing, or a parsimonious claims-granting history. "A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial … fails adequately to investigate a claim or ask the plaintiff for necessary evidence … fails to credit a claimant's reliable evidence … or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Id*. at 968-69.

In the present case, Plaintiff has failed to demonstrate that Prudential unduly delayed or otherwise failed to adequately investigate her claim such that the Court should engage in a heightened review of Prudential's denial of benefits. Plaintiff claims that Prudential delayed consideration of her March 1, 2007 appeal until December 28, 2009, when Prudential awarded Plaintiff benefits through December 31, 2006. However, much of this delay is attributable to Plaintiff. Although her application for LTD benefits was denied because of insufficient medical evidence supporting a finding of impairment, Plaintiff did not file any additional medical records in support of her March 1, 2007 appeal. (Doc. 30-2, pg. 119.) More than one year after Plaintiff filed her appeal, she retained counsel, who requested extensions of time on June 3, 2008 and July 7, 2008.[2]

---

[2] It is unclear from the record why Plaintiff's appeal remained pending with Prudential

- 4 -

(Doc. 30-2, pgs. 138, 140.)  On July 25, 2008, Plaintiff's counsel requested a closed period of disability from February 17, 2006 to September 1, 2006.  (Doc. 30-2, pg. 147.)  On November 20, 2008, Prudential awarded Plaintiff benefits from March 3, 2006 to October 31, 2006 – an end-date beyond what Plaintiff had requested.  (Doc. 30-4, pg. 141.)  After Prudential alerted Plaintiff's counsel to the possibility of Plaintiff's eligibility for additional LTD benefits, Prudential engaged in an ongoing exchange with Plaintiff's counsel in an attempt to obtain all the medical records necessary for its review.  (Doc. 30-2, pgs. 187-212; Doc. 30-4, pgs. 40-52.) That exchange continued until Prudential denied an award of additional benefits on December 28, 2009.  The record does not provide any evidence of malice or self-dealing by Prudential such that this Court should alter the standard of review.

## ANALYSIS

Plaintiff alleges that Prudential's denial of benefits relies on clearly erroneous findings of fact because it ignored medical evidence submitted by Plaintiff indicating that Plaintiff was disabled from January 1, 2007 to March, 2008.  Specifically, Plaintiff claims that Prudential: (1) misinterpreted Plaintiff's medical records from 2006 when it concluded that Plaintiff was able to return to work on January 1, 2007; (2) failed to properly evaluate Plaintiff's medical records from 2007 to 2011; (3) abused its discretion by relying on the opinions of reviewers evaluating Plaintiff's claim; and (4) abused its discretion by failing to hire an independent medical examiner.[3]

---

from March, 2007 to May, 2008; perhaps Prudential was waiting for the additional medical records requested from Plaintiff.  Plaintiff contends that this delay exceeded the time limits set by 29 CFR § 2560.503-1, but violations of the time limits established in 29 C.F.R. § 2560.503-1 are insufficient to alter the standard of review.  *See Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978 (9th Cir. 2005.)  The record as a whole demonstrates that Prudential worked diligently to process Plaintiff's claim and engage in a good faith exchange of information, even alerting Plaintiff to possible benefits of which she was not aware.

[3] LRCiv. 16.1, with which the parties were directed to comply, requires Plaintiff to set forth in separate numbered paragraphs the issues presented for review.  Plaintiff's Opening Brief identified two "issues," which Defendants briefed as four. (Doc. 28, pg. 4; Doc. 29, pgs. 7-18.)  The Court has construed Plaintiff's Opening Brief as raising the four claims discussed herein.  In addition, the Court notes that most of Plaintiff's Opening Brief consists of recitations of her medical record and copious case citations, with little analysis or argument, making it difficult to

A decision is clearly erroneous if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011). The Court must be left with a "definite and firm conviction that a mistake has been committed," and may not merely substitute its view for that of the fact finder. *Id*. The Court concludes that Prudential's decision was logical, plausible and supported by facts in the record. Plaintiff's arguments to the contrary essentially ask this Court to substitute its judgment for that of Prudential, which the abuse of discretion standard does not permit this Court to do.

**A.     Prudential's Findings and Conclusions**

In its September 11, 2006 decision, Prudential stated that it had reviewed the medical records provided by Plaintiff's treating physician, Dr. Miriam Borton. (Doc. 30-4, pg. 149.) Prudential concluded that Dr. Borton's medical records indicated that from March, 2006 through August, 2006, Plaintiff had been treated by Dr. Borton for reported depression, anxiety and increased alcohol consumption. (Doc. 30-4, pg. 149.) Dr. Borton's notes indicated inconsistent reports from Plaintiff regarding her mental health; at times Plaintiff reported anxiety and depression but during other appointments Plaintiff denied anxiety and reported doing well. (*Id*.) Prudential concluded that Plaintiff's medical records did not demonstrate a consistent and total disability from the date Plaintiff had left work. (*Id*.)

In its November 20, 2008 decision, Prudential stated that it had reviewed additional medical information provided by Plaintiff's treating physician and determined that Plaintiff was disabled from March 3, 2006 to October 31, 2006.  (Doc. 30-4, pg. 142.) Prudential's decision did not discuss the available medical records in detail, apparently because Prudential anticipated receiving additional records from Plaintiff to support a follow-up request for a period of disability through March, 2008. (*Id*.)

In its December 28, 2009 decision, Prudential stated that it had reviewed

---

discern the issues raised on appeal.

additional medical records provided by Plaintiff's treating physician, Dr. Anastasio, but that additional medical records were needed in order for it to evaluate Plaintiff's claim of disability beyond December 31, 2006. (Doc. 30-4, pg. 118.) Prudential requested the medical records of Dr. Stephen Able from January, 2007 to March, 2008. (*Id*.) Prudential also requested updated records from Dr. Miriam Borton and Dr. Anastasio. (Doc. 30-4, pgs. 116, 133.)

In its October 18, 2010 decision, Prudential indicated that it had reviewed a narrative from Dr. Able dated November 23, 2008, medical records from Dr. Able and Dr. Borton, and the records submitted in support of Plaintiff's application for Social Security disability.[4] (Doc. 30-4, pgs. 108-09.) Prudential submitted Plaintiff's medical records to a medical director for review. Prudential noted that the medical records provided by Plaintiff documented a psychiatric illness in March-August, 2006, but that her treating physicians opined that she would improve with treatment and return to work after that time period. (Doc. 30-4, pg. 109.) Prudential also noted that in 2007, Plaintiff received medical treatment only from her Arizona primary care physician, Dr. Katy Nance, who opined that Plaintiff reported depression and stress on some occasions but was "mostly stable, actively engaging in exercise activities such as hiking 5-6 miles/day, eating healthy, losing weight and feeling great." (Doc. 30-4, pg. 109.) Mental status exams dated August 2008 – September 2009 did not support a severe psychiatric functional impairment. (Doc. 30-4, pg. 109.) On April 9, 2008, Dr. Stephen Bailey completed a Pyschiatric/Mental Residual Functional Capacity Assessment in which he concluded that Plaintiff's "main difficulty lies in effort, and not being interested in performing basic work tasks … she is capable of understanding, remembering and carrying out simple instructions. She is capable of making simple work-related decisions, and adjusting to changes in work setting. She can work with and around others, though a

---

[4] Prudential noted that while Plaintiff had only notified Prudential of her psychiatric condition, her Social Security disability file indicated Plaintiff also suffers from joint pain, hand/wrist pain, rheumatoid arthritis, sleep apnea and osteoporosis. (Doc. 30-4, pg. 109.) Prudential adjusted its consideration of Plaintiff's LTD claim accordingly.

low social work setting may best suit her." (Doc. 30-3, pg. 99.) Dr. Bailey also noted that Plaintiff reported that she had not been medicated in some time and refused to take medication because it did not improve her symptoms. (Doc. 30-3, pg. 114.) Plaintiff refused to cooperate for portions of the assessment, prompting Dr. Bailey to note that he was "suspicious" of her test results. (Doc. 30-3, pg. 114.) Prudential noted that Plaintiff's self-reported severe incapacitation was at odds with the active and physical social lifestyle described in her medical records. (Doc. 30-4, pg. 110.)

In its June 6, 2011 decision, Prudential noted that it had added to Plaintiff's medical file a letter from Plaintiff, medical records from Roberta Rose, D.O., medical records from Dr. Mark Iannani, and a Competitive Work Capacities Asssessment Report dated April 13, 2011. (Doc. 30-4, pg. 94.) In addition, Prudential submitted Plaintiff's medical file to two independent reviewing physicians. (Doc. 30-4, pg. 94.) A rheumatology physician-reviewer concluded that the medical record did not include any documentation of rheumatic condition from July 2007 to July 2008. (Doc. 30-4, pg. 95.) A psychiatric physician-reviewer concluded that there was an absence of medical documentation to support a functional impairment caused by mental illness from January, 2007 forward. (Doc. 30-4, pg. 95.) The psychiatric physician-reviewer considered records from Dr. Able, Dr. Bailey, Dr. Rose, Agave Mental Health and Dr. Rohen, noting various inconsistencies in the medical record and the general absence of a treatment plan typically associated with functional impairment. (Doc. 30-4, pgs. 95-96.) In addition, the psychiatric physician-reviewer noted that both Dr. Bailey and Dr. Rose had observed behavior suggesting malingering. (Doc. 30-4, pg. 95.)

In its January 25, 2012 decision, Prudential considered a neuropsychological evaluation by Dr. John Beck dated December 2, 2011. (Doc. 30-4, pg. 81.) It also submitted Plaintiff's medical records to an independent physician-reviewer board-certified in psychiatry. (Doc. 30-4, pg. 81.) The physician-reviewer considered Plaintiff's medical records from Drs. Able and Borton as well as the evaluations prepared by independent medical examiners Drs. Rohen and Malhotram. (Doc. 30-4, pg. 81.) The

physician-reviewer concluded that there was insufficient medical evidence of significant functional impairment caused by psychiatric symptoms. (Doc. 30-4, pg. 82.) The physician-reviewer noted inconsistencies between doctors indicating cognitive symptoms and Plaintiff's normal cognitive functioning on mental status exams, as well as a lack of treatment consistent with Plaintiff's alleged disability. (Doc. 30-4, pg. 82.) Finally, the physician-reviewer commented that Plaintiff's medical appointments were infrequent and the record did not include information about her activities in between appointments. (Doc. 30-4, pg. 82.) Based on this additional information, Prudential concluded that the decision to terminate Plaintiff's LTD benefits effective January 1, 2007 was appropriate. (Doc. 30-4, pg. 82.)

**B.      Plaintiff has failed to demonstrate that Prudential misconstrued her pre-2007 medical records**

Plaintiff disputes Prudential's conclusion, based on medical records from 2006, that Plaintiff was able to return to work on January 1, 2007.[5]  First, in support of this argument, Plaintiff notes that she was diagnosed on March 1, 2006 with bipolar disorder, alcohol abuse, PTSD and alcohol dependence. (Doc. 30-2, pg. 117.) That diagnosis was made by Dr. Khouri after Plaintiff sought treatment at Princeton House for reported alcohol addiction. Dr. Khouri did not render an opinion regarding whether Plaintiff was disabled or whether she could return to work.

Second, Plaintiff also notes that on May 15, 2006, Dr. Borton wrote that Plaintiff's depression, anxiety and difficulty concentrating could obstruct Plaintiff's ability to return to work. (Doc. 30-2, pg. 3.) However, in June, 2006, Dr. Borton opined that Plaintiff could return to work by September 5, 2006. (Doc. 30-2, pg. 7.)

Third, Plaintiff notes that on August 14, 2006, she was admitted to the Medical Center in Princeton, New Jersey when she self-reported depression and anxiety. The medical records from Princeton, viewed in their entirety, primarily consist of Plaintiff's

---

[5] Each of the medical records noted by Plaintiff in support of this argument was reviewed and considered by Prudential.

self-reported symptoms; they do not include an objective diagnosis of a severe mental impairment or an opinion as to whether Plaintiff is disabled and/or able to work or return to work. (Doc. 30-2, pgs. 112-113.)

Finally, Plaintiff claims that Prudential unfairly disregarded an independent medical exam by Dr. Malhotra which Plaintiff obtained on October 23, 2008. Dr. Malholtra opined that Plaintiff was totally disabled and unable to work and that it could be "as long as 6 months" before Plaintiff would be able to return to work. (Doc. 30-2, pgs. 160-61.) Prudential considered Dr. Malholtra's opinion in its October 18, 2010 decision and concluded that extending benefits through December, 2006 to allow for stabilization of treatment was reasonable, particularly given the scant medical evidence of continuing impairment following Plaintiff's exam by Dr. Malhotra. (Doc. 30-4, pg. 112.) This was a reasonable conclusion supported by the record: following her appointment with Dr. Malhotra, Plaintiff did not pursue the "aggressive treatment of her alcoholism and bipolar disorder" that he recommended, but instead received only occasional treatment by primary care physician Dr. Katy Vance. (Doc. 30-3, pgs. 73-79.) Dr. Vance's records indicate that in 2007, Plaintiff moved, began building a home, was engaged to be married, hiked 5-6 miles per day, started a diet and "felt great." (*Id*.) By July, 2008, Dr. Vance no longer listed insomnia or depression as part of Plaintiff's diagnosis and Plaintiff reported losing 16 pounds and feeling great. (Doc. 30-3, pg. 131.) In sum, the pre-2007 medical evidence noted by Plaintiff does not contradict the findings of Prudential or suggest that Prudential's decision to deny benefits was illogical, implausible, or without support in the record.

**C.   Plaintiff has failed to demonstrate that Prudential did not properly evaluate her medical records from 2007 to 2011**

Plaintiff also disputes Prudential's conclusion that her medical records from 2007 to 2011 did not support a finding of disability after January 1, 2007. First, Plaintiff notes that she reported anxiety and insomnia to Dr. Vance in April, September and October, 2007. However, as previously stated, Dr. Vance's records indicate that in November,

- 10 -

2007, Plaintiff was hiking 5-6 miles per day, dieting and feeling great. (Doc. 30-3, pg. 74.)

Second, Plaintiff notes that on October 22, 2007, she sought treatment at Agave Mental Health where records indicate that she was disoriented, had an altered gait and a dazed look.[6] (Doc. 30-3, pg. 25.) The Agave Mental Health record does not contain any medical opinion regarding the severity of Plaintiff's impairments, necessary treatment or ability to work. (*Id*.)

Third, Plaintiff notes that Dr. Able provided a statement on November 23, 2008 stating that Plaintiff had been "under treatment for PTSD and a Complex Mood Disorder with Sleep Disorders including Obstructive Sleep Apnea Syndrome and Upper Airway Resistance Syndrome" and that Plaintiff was "unable to work now or in the future." (Doc. 30-2, pg. 94.) Plaintiff claims Prudential improperly disregarded the medical records underlying this statement. However, Prudential fully evaluated Dr. Able's medical records and concluded that his assessment was largely based on Plaintiff's self-reporting and that his medical records were replete with medical observations contradicting his conclusion that Plaintiff was disabled. (Doc. 30-4, pg. 96.) In addition, Plaintiff was treated by Dr. Able every 3 to 4 weeks in 2008 and every 3-6 months in 2009, a treatment record which has little relevance to whether Plaintiff was suffering from disabling mental impairment in 2007. (Doc. 30-3, pgs. 167-171.)

Fourth, Plaintiff notes that Dr. Rohen's March 21, 2008 psychometric evaluation concluded that Plaintiff suffered from bipolar disorder and was expected to exhibit some impairments in ability to concentrate, interact socially, and get out of the house regularly. (Doc. 30-3, pg. 94.) It was reasonable for Prudential to discredit this evaluation. (Doc. 30-4, pg. 96.) Dr. Rohen reported that Plaintiff conducted the interview with her eyes closed and did not seem to care; this observation was supported by Dr. Bailey's April, 2008 report that Plaintiff's "main difficulty lies in effort, and not being interested in

---

[6] Plaintiff did not receive treatment at Agave Mental Health; she was transported from Agave to St. Joseph's Hospital after her assessment. (Doc. 30-3, pg. 25.)

performing basic work tasks." (Doc. 30-3, pg. 99.) In addition, the evaluation occurred outside the 24-month period for which Plaintiff was attempting to establish disability, and did not speculate as to Plaintiff's ability to work in 2007.

Fifth, Plaintiff notes that Dr. Rose treated Plaintiff from December, 2009 through July, 2010 for memory loss. (Doc. 30-3, pgs. 202-206.) It was reasonable for Prudential to give only brief consideration to Dr. Rose's notes. (Doc. 30-4, pg. 96.) Plaintiff's treatment for memory loss is not relevant to her claim for LTD benefits stemming from her alleged anxiety and depression. In addition, Dr. Rose treated Plaintiff on only three occasions, in late 2009 – mid-2010. Her notes indicate that Plaintiff failed to schedule follow-up visits and it was unclear whether Plaintiff had taken prescribed medication. (Doc. 30-3, pg. 206.) Dr. Rose's treatment records have little bearing on Plaintiff's mental health in 2007.

Finally, Plaintiff notes that in December, 2011, Dr. John Beck conducted a neuropsychological evaluation of Plaintiff in which he opined that Plaintiff had been disabled due to PTSD and bipolar disorder since 2006. (Doc. 30-3, pg. 300.) It was reasonable for Prudential to give less weight to Dr. Beck's opinion given that it was contradicted by an absence of consistent mental health treatment since 2006 and various inconsistencies in Plaintiff's medical records. (Doc. 30-4, pg. 82.) In addition, the Court notes that Dr. Beck's December, 2011 evaluation was temporally distant from the period of impairment at issue in this litigation.

**D.    Prudential did not abuse its discretion by relying on the opinions of reviewers**

Plaintiff makes a cursory argument suggesting that Prudential abused its discretion by relying on the opinions of reviewers evaluating Plaintiff's claim. (Doc. 28, pg. 8.) However, ERISA does not require that plan administrators give the opinions of treating physicians special weight. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). Moreover, the record indicates that over the course of its review of Plaintiff's claim and in the six decisions Prudential eventually issued in this matter, Prudential requested, obtained and reviewed the records of Plaintiff's treating physicians

and gave those records due weight. Accordingly, this argument is without merit

### E. Prudential did not abuse its discretion by failing to retain an independent medical examiner

Finally, Plaintiff claims that Prudential abused its discretion by failing to retain an independent medical examiner. However, ERISA also does not require that an insurer seek independent medical examinations. *See Kushner v. Lehigh Cement Co.*, 572 F.Supp.2d 1182, 1192 (C.D. Cal. 2008) (collecting cases). To the contrary, file review by psychiatrists and other doctors in ERISA cases is "widely accepted." *Id.* Unlike the cases cited by Plaintiff, this case does not contain a suggestion in the record that the reviewers retained by Prudential were not provided with complete medical files or rendered opinions based on Plaintiff's credibility. Accordingly, this argument is without merit.

## CONCLUSION

THEREFORE, IT IS ORDERED THAT the relief requested in Plaintiff's Opening Brief (Doc. 28) is DENIED. This case is DISMISSED. The Clerk of the Court shall enter judgment in favor of Defendants and close the file in this matter.

Dated this 17th day of June, 2013.

Jennifer G. Zipps
United States District Judge